**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 15-cv-1521-WJM-KMT

CELINA R. DAVIS, Substituted for
DUANE S. DAVIS, Deceased,

      Plaintiff,

v.

HON. ROBERT WILKIE of DOD, SECRETARY OF THE DEPARTMENT OF
VETERANS AFFAIRS, in his Official Capacity.[1]

      Defendant.

---

## ORDER DISMISSING CASE WITH PREJUDICE FOR FAILURE TO PROSECUTE

---

      This matter comes before the Court *sua sponte* regarding Plaintiff Celina R.

Davis's failure to prosecute and comply with Court Orders.

      On July 16, 2015, Duane S. Davis ("Mr. Davis") brought claims against the

Honorable Robert Wilkie, Secretary of the Department of Veterans Affairs, in his official

capacity ("Defendant"), alleging (1) disability discrimination under the Rehabilitation Act

of 1973 ("Rehabilitation Act"; 29 U.S.C. §§ 791 *et seq*.), (2) retaliation for exercising his

rights under both the Rehabilitation Act and Title VII of the Civil Rights Act of 1964

("Title VII"; 42 U.S.C. §§ 2000e *et seq*.), and (3) "hostile work environment/constructive

discharge."  (ECF No. 1.)

---

[1] The parties' pleadings identify "Robert A. McDonald" as the Secretary of the
Department of Veterans Affairs.  While Mr. McDonald held that position when this lawsuit was
filed in 2015, he has since been succeeded by five different Secretaries.  Thus, the Court has
updated the caption of this Order to reflect the current Secretary of the Department of Veterans
Affairs, the Honorable Robert Wilkie, as the correct Defendant.

During the pendency of this lawsuit, however, Mr. Davis passed away. (ECF No. 77.) As a result, Mr. Davis's interests in this litigation transferred to his wife, Celina R. Davis ("Plaintiff"), and the Court subsequently granted her motion to be substituted as the real party in interest and plaintiff in this action. (ECF Nos. 78 & 79.)

For the reasons set forth below, the Court dismisses this case with prejudice.

## I. PROCEDURAL HISTORY

### A.    Background

Mr. Davis began working at the Denver Regional Office of the Department of Veterans Affairs ("the VA") in 1988 and continued to work there until he was allegedly forced to retire in 2011. (ECF No. 1 at 2, 11, ¶¶ 6–7, 85.) During his employment at the VA, he was diagnosed with a bad back, hypertension, and swelling of hands, feet and legs due to congestive heart failure. (*Id.* at 3, ¶¶ 10–12.) Mr. Davis filed this action against Defendant on July 16, 2015. (ECF No. 1.) Mr. Davis and Plaintiff have been represented by John W. Davis ("John Davis" or "Plaintiff's counsel"), who is Mr. Davis's older brother, throughout this lawsuit. John Davis is based in Washington, D.C.

In the Complaint, filed on July 16, 2015, Plaintiff brings three causes of action against Defendant. First, Plaintiff alleges that Defendant "failed and refused to grant a reasonable accommodation of [Mr. Davis's] medical conditions" in violation of his rights under the Rehabilitation Act. (*Id.* at 12, ¶ 89.) Second, Plaintiff claims that Mr. Davis was retaliated against for engaging in the VA Equal Employment Opportunity Complaint Process—a protected activity under Title VII and the Rehabilitation Act. (*Id.* at 12, ¶¶ 91–93.) Finally, Plaintiff alleges that Defendant, "in perpetuating the acts and

2

practices described herein, purposefully made [Mr. Davis's] work environment so hostile, and made his working conditions so intolerable that [Mr. Davis] was forced to resign in order to preserve his physical and mental health." (*Id.* at 13, ¶ 95.)

## B.   Initial Scheduling Conference

After two resettings (ECF Nos. 8 & 10), the initial Scheduling Conference was set for December 30, 2015 (ECF No. 12). On December 15, however, the parties filed a joint motion to have the Scheduling Conference moved to a later date. (ECF No. 14.) In the joint motion, the parties explained that the "reason for this request is the need for Plaintiff's counsel to address a serious health matter that prevents him from preparing for and participating in the Scheduling Conference on [December 30, 2015]." (*Id.* at 1.) The parties also noted that due to attorney John Davis's health problems, they had "not been able to conduct the conference required under Fed. R. Civ. P. 26(f) or to complete the preparation of the proposed Scheduling Order, which must be filed by December 23, 2015." (*Id.*)

On December 16, 2015, the joint motion was granted (ECF No. 16) by United States Magistrate Judge Kathleen M. Tafoya, and the Scheduling Conference was reset for January 20, 2016 (ECF No. 17). The Scheduling Conference was held on that date (ECF No. 23), and the Magistrate Judge issued a Scheduling Order (ECF No. 24). Among other things, the Scheduling Order set an expert witness disclosure deadline of May 16, 2016; a rebuttal expert disclosure deadline of June 16, 2016; a discovery cut-off of August 31, 2016; a dispositive motions deadline of October 3, 2016; and a final pretrial conference on December 13, 2016. (*Id.* at 8–10.)

## C.     First Set of Discovery Requests

On January 19, 2016, Defendant served Mr. Davis with his first set of discovery requests ("First Set"), which included three requests for production of documents ("RFPs") and four interrogatories.  (ECF No. 32 at 2.)[2]  Pursuant to Rules 33(b)(2) and 6(d) (in the versions in effect at that time), Mr. Davis's responses to these discovery requests were due on or before February 22, 2016.  After not receiving any responses from Mr. Davis on that date, Defendant's counsel reached out to John Davis on February 24.  (*Id.*)  During their conversation, John Davis "indicated that [Mr. Davis] would respond to the First [Set of Discovery] Requests by Wednesday, March 9, 2016." (*Id.*)

On March 10, 2016, however, John Davis informed Defendant that he needed until March 16 to provide Mr. Davis's responses to Defendant's First Set of discovery requests.  (*Id.*)  On April 7, Defendant once again reached out to John Davis to inquire about when Mr. Davis would respond to the First Set of discovery requests.  (*Id.* at 2–3.)  In their conversation, John Davis "indicated that he had been in poor health and promised to provide responses by April 18, 2016."  (*Id.* at 3.)  John Davis, however, failed to provide the responses by that day.  (*Id.*)

On April 26, 2016, the parties filed a Joint Motion for Status Conference, advising the Court that "Plaintiff's counsel has been in ill health and has been unable, to

_____

[2] Mr. Davis did not object to the procedural history set forth in Defendant's first Motion to Compel Discovery (*i.e.*, ECF No. 32), but instead conceded that the "procedural history recited by Defendant in its motion is essentially correct."  (ECF No. 35 at 1.)  Therefore, for the purposes of this Order, the Court will take the procedural history contained in the motion as true.

date, to participate in discovery." (ECF No. 26 at 2, ¶ 5.) The parties further informed the Court that John Davis had recently been "advised by his physician to refrain from the practice of law for a minimum of 90 days." (*Id*.) The parties also noted that Defendant had "concerns about potential prejudice resulting from further delays" since "[a]t least one VA witness ha[d] retired," another had "accepted a job with another federal agency," and other witnesses had "moved to new VA positions in other states." (*Id*. at 2, ¶ 7.) The parties noted that "[t]hese changes demonstrate that it will be increasingly difficult for the [Defendant] to ensure the availability of critical witnesses as time passes." (*Id*.)

On April 28, 2016, the Magistrate Judge granted the motion in part, and, rather than setting a status conference or a granting a stay, extended the deadlines set forth in the original Scheduling Order by 120 days. (ECF No. 28.) Specifically, the Magistrate Judge extended the expert witness disclosure deadline to September 13, 2016; the rebuttal expert disclosure deadline to October 14, 2016; the discovery cut-off to December 29, 2016; the dispositive motions deadline to January 31, 2017; and the final pretrial conference to April 12, 2017. (*Id*.)

The same day as the Magistrate Judge's order, Defendant "once more contacted Plaintiff's counsel, noting that notwithstanding the extension, [Mr. Davis's discovery] responses were still overdue." (ECF No. 32 at 3.) John Davis, however, "did not respond or otherwise provide documents until approximately two months later," when he furnished a response to one of the three RFPs in the First Set. (*Id*.) Over the next few months, Defendant made several unsuccessful attempts to confer with John Davis

about when he would respond to the outstanding discovery requests. (*Id*.) Finally, on September 9, 2016, John Davis "indicated that he would provide complete responses to the First [Set of Discovery] Requests no later than September 16, 2016." (*Id*.) John Davis, however, did not provide the responses by that day. (*Id*.)

On September 12, 2016, Defendant filed an Unopposed Motion to Amend the Scheduling Order. (ECF No. 29.) In the motion, Defendant sought an extension of the case deadlines since Defendant had "only recently received copies of some of [Mr. Davis's] medical records that were requested in January 2016" (apparently in reference to the one RFP John Davis had provided to Defendant), and still had "not received responses to other discovery requests propounded in January 2016." (*Id*. at 2, ¶ 8.) Defendant's counsel also notified the Court that she had "repeatedly contacted Plaintiff's counsel in February, March, and April of 2016 to inquire about the status of [Mr. Davis's] response to Defendant's January discovery requests. Plaintiff's counsel explained that ill health prevented him from responding to Defendant's discovery requests." (*Id*. at 2, ¶ 11.)

On September 13, 2016, the Magistrate Judge granted Defendant's motion and continued all of the case deadlines for approximately one to two additional months. (ECF No. 31.) In particular, the Magistrate Judge extended the expert witness disclosure deadline to November 14, 2016; the rebuttal expert disclosure deadline to December 13, 2016; the discovery cut-off to January 30, 2017; the dispositive motions deadline to March 2, 2017; and the final pretrial conference to May 2, 2017. (*Id*.) In the order, the Magistrate Judge expressly stated: "No further extensions of these deadlines

will be granted absent extraordinary circumstances." (*Id.*)

## D.  First Motion to Compel Discovery

On September 22, 2016, Mr. Davis provided written responses to Defendant's interrogatories, and stated that his responses to the remaining RFPs were forthcoming. (ECF No. 32 at 4.)  On September 27, Defendant contacted John Davis to inquire when Defendant might expect to receive Mr. Davis's responses to the outstanding RFPs. (*Id.*)  Having received no reply, Defendant "again contacted Plaintiff's counsel on October 3, 2016, advising him that if he did not either provide the remaining RFP responses or advise as to his availability to set an informal discovery conference by October 5, 2016," Defendant would file a motion to compel discovery.  (*Id.*)  Plaintiff's counsel did not respond and thus, on October 6, 2016, Defendant filed a Motion to Compel Discovery.  (ECF No. 32.)  In the motion, Defendant asked the Court to compel the production of documents that Defendant had requested from Mr. Davis almost ten months prior.  (*Id.*)

On October 20, 2016, Mr. Davis filed a response to Defendant's Motion to Compel Discovery.  (ECF No. 35.)  In the response, Mr. Davis conceded that he had "failed to timely and properly respond to Defendant's discovery responses," but offered various excuses.  (*Id*. at 1–2.)  In particular, Plaintiff noted that Mr. Davis's "frequent hospitalizations and [Plaintiff's] counsel's extended illness between August 2015, and August 2016, have been the major factors in the delay."  (*Id*. at 2.)  Moreover, Mr. Davis noted that the "other delays that were occasioned subsequent to Plaintiff's counsel's return in July from his medical hiatus had to do with the fact that in July and August 2016, counsel suffered the deaths of three young Black men close to counsel (two were

murdered, and one died of a drug overdose)." (*Id.*) On the same day, Mr. Davis provided Defendant "with responses to the last of Defendant's unanswered discovery requests served January 19, 2016." (ECF No. 37 at 1; *see also* ECF No. 35 at 2.)

On October 27, 2016, Defendant informed the Court that Mr. Davis's discovery responses appeared to be incomplete and provided the Court with several examples. (ECF No. 37 at 2–3.) For instance, Defendant noted how in Mr. Davis's response to an interrogatory asking him to identify all of his private medical providers for the last ten years, Mr. Davis listed three private medical providers. (*Id.* at 2.) In his response to Defendant's first RFP, however, Mr. Davis had listed four private medical providers. (*Id.*)

On November 1, 2016, the Magistrate Judge held a hearing on Defendant's Motion to Compel Discovery. (ECF No. 38.) During the hearing, the Magistrate Judge granted Defendant's motion and extended the case deadlines for yet another 45 days. (*Id.*) Specifically, the Magistrate Judge extended the expert witness disclosure deadline to December 14, 2016; the rebuttal expert disclosure deadline to January 13, 2017; the discovery cut-off to March 15, 2017; the dispositive motions deadline to April 17, 2017; and the final pretrial conference to June 14, 2017. (*Id.*)

E.      **Second Set of Discovery Requests**

On December 20, 2016, Defendant served Mr. Davis with his Second Set of Written Discovery ("Second Set"), along with a reminder that Mr. Davis's responses were due on January 19, 2017, which was three day's before Defendant was to take his

deposition.  (ECF No. 44 at 2.)[3]  Defendant's counsel further informed Mr. Davis "that because she expects to refer to [Mr. Davis's] responses to Defendant's Second Set during his deposition, Defendant will not agree to any extension of time to respond." (*Id*.)

On January 4, 2017, Defendant e-mailed John Davis, reminding him that Mr. Davis's deadline to respond to the Second Set was January 19.  (*Id*.)  Defendant repeated this reminder on January 9, January 11, and January 17.  (*Id*. at 3.)  On January 20, John Davis advised Defendant that "due to circumstances beyond our control, we were unable to complete [Mr. Davis's] responses to Defendant's Second [Set of] discovery requests."  (*Id*.)  However, John Davis stated that he would have Mr. Davis's responses to the Second Set "completed by early next week."  (*Id*.)  On January 23, Defendant took Mr. Davis's deposition without the benefit of having his responses to the Second Set.  (*Id*.)

At his deposition, Mr. Davis agreed to provide Defendant with his responses to the Second Set by February 6, 2017.  (*Id*.)  On February 14, however, John Davis contacted Defendant, "stating that he has been 'seriously under the weather,' but is now 'up and around,'" and that he "promises to deliver responses no later than February 17th."  (*Id*.)  On February 24, John Davis's assistant e-mailed Defendant's counsel, informing her that John Davis had been "hospitalized on February 21st with

---

[3] Plaintiff and Mr. Davis did not respond to Defendant's Second Motion to Compel Discovery (*i.e.*, ECF No. 44), nor have they objected to any of the procedural history set forth in the motion.  Accordingly, for the purposes of this Order, the Court accepts as true Defendant's statements contained in the motion regarding the procedural history of this case.  (*See also* ECF No. 58 at 3 (Mr. Davis appears to concede that the procedural history recited in the Recommendation (ECF No. 57) is correct).)

acute bronchitis, and is scheduled to return to work on February 27th." (*Id*.)

On March 13, 2017, two days before the discovery cut-off, the parties filed another Joint Motion to Amend Scheduling Order, again because of John Davis's health issues and inability to participate in discovery. (ECF No. 41.) The Magistrate Judge granted the motion and extended the case deadlines for yet another 45 days. (ECF No. 43.) In particular, the Magistrate Judge extended the discovery cutoff to May 1, 2017; the dispositive motions deadline to June 1, 2017; and the final pretrial conference to July 31, 2017. (*Id*.)

On April 6, 2017, Defendant e-mailed John Davis and also left detailed voice messages on his office and mobile numbers, reminding John Davis that discovery responses to Defendant's Second Set were overdue. (ECF No. 44 at 4.) Defendant repeated this reminder on April 16, 17, and 19. (*Id*.) On April 20, John Davis e-mailed Defendant, stating that "he is currently working with his client to complete the responses to Defendant's Second Set, but 'will not have them' until the morning of April 24th." (*Id*.) John Davis, however, did not provide the responses by that day. (*Id*.) On May 1, discovery concluded. (*See* ECF No. 43.)

## F.     Second Motion to Compel Discovery

On May 2, 2017, Defendant filed a Second Motion to Compel Discovery, advising the Court that Mr. Davis had failed to respond to Defendant's Second Set of discovery requests, which were served on Mr. Davis in December 2016. (ECF No. 44.) The Second Set comprised four RFPs, eight interrogatories, and two requests for admission ("RFAs"). (*Id*. at 2.) As of May 2, however, Mr. Davis had provided only a partial response to one of the four RFPs. (*Id*. at 1.) In the motion, Defendant made the

following statement:

> [Mr. Davis's] repeated and persistent delays are prejudicial to Defendant. This case concerns events that took place in 2010 and late 2011. As a result of [Mr. Davis's] delays, this case has now been in discovery for over 15 months—eight months past the date when it was originally meant to conclude. At least one key witness has moved outside of the subpoena power of this Court since the litigation began. The whereabouts of 13 of [Mr. Davis's] witnesses—most or all of whom were Denver VA employees at the time of the events giving rise to this lawsuit—are no longer known. [Defendant has] had to take three depositions without the benefit of [Mr. Davis's] responses to Defendant's Second Set.

(*Id.* at 7 (citations omitted).) Therefore, Defendant requested that the Court "compel [Mr. Davis] to respond in full to Defendant's Second Set, deem Defendant's RFAs admitted, and award Defendant [his] reasonable expenses incurred in making [his Second Motion to Compel Discovery]." (*Id.*)

While Defendant's Second Motion to Compel Discovery was pending before the Magistrate Judge, Defendant filed an Unopposed Motion to Amend Scheduling Order on May 17, 2017. (ECF No. 46.) In the motion, Defendant informed the Court that, despite repeated reminders, Mr. Davis had still not responded to Defendant's Second Set of discovery requests. (*Id.* at 1, ¶ 3.) Therefore, Defendant requested that the Court convert the dispositive motion deadline from a fixed date to a floating date 30 days after Mr. Davis had produced the requested discovery responses, and that the final pretrial conference be reset for a later date. (*Id.* at 2, ¶¶ 5–6.) On May 22, the Magistrate Judge granted Defendant's motion and vacated the June 1, 2017 dispositive motion deadline and the final pretrial conference. (ECF No. 49.) In addition, the Magistrate Judge set a hearing on Defendant's Second Motion to Compel Discovery for

June 14.  (ECF No. 48.)

On June 7, 2017, John Davis filed an unopposed motion to attend the hearing by telephone, advising the Court that he "has been unable to travel for several weeks due to [his] heavy schedule."  (ECF No. 50 at 1, ¶ 2.)  Moreover, John Davis informed the Court that he was unable to appear in person at the hearing because he was "in the process of completing his fourth opposition to a dispositive motion in as many weeks" and was "also in the middle of an evidentiary hearing before the EEOC in Baltimore." (*Id*. at 1, ¶¶ 2–3.)  The Magistrate Judge granted the motion the next day.  (ECF No. 52.)

On June 14, 2017, the Magistrate Judge held a hearing on Defendant's Second Motion to Compel Discovery.  (ECF No. 53.)  The following is the Magistrate Judge's description of what transpired:

> During the hearing, the court provided Plaintiff's counsel ample opportunity to explain why [Mr. Davis] was not participating in discovery and prosecuting the case. Plaintiff's counsel apologized to the court and the defendant, [and "admitted to the court . . . that he had failed to respond to Defendant's discovery requests because of his own busy schedule and Plaintiff's counsel's representation that [Mr. Davis] had nothing further to produce"].  The court advised Plaintiff's counsel that, regardless, [Mr. Davis] had a duty to respond to the discovery requests that had been pending since December 2016, and Plaintiff's counsel stated he understood that.  Plaintiff's counsel advised he would be able to respond to the discovery responses by June 19, 2017. . . .  The court warned Plaintiff's counsel that [Mr. Davis's] failure to comply with the court's orders and failure to respond to the discovery requests would result in this court's recommendation that the case be dismissed with prejudice pursuant to *Ehrenhaus v. Reynolds*, 965 F.2d 916 (10th Cir. 1992).

(ECF No. 57 at 3–4, 6.)

The Magistrate Judge then granted Defendant's Second Motion to Compel Discovery and ordered Plaintiff to "**respond to Defendant's Second Set of Written Discovery [Doc. No. 44-1], as discussed, on or before June 19, 2017**." (ECF No. 53 (emphasis in original).) The Magistrate Judge explicitly noted that "[**f**]**ailure to respond**" by June 19 "**may result in sanctions**" against Mr. Davis, "**including dismissal of the case.**" (*Id*. (emphasis in original).) In addition, the Magistrate Judge ordered that Mr. Davis's objections to the Second Set were deemed waived and that the RFAs included in the Second Set were deemed admitted. (*Id*.) Moreover, the Magistrate Judge awarded Defendant costs and attorneys' fees against John Davis which were incurred in pursuing Defendant's Second Motion to Compel Discovery. (*Id*.) The Magistrate Judge also once again extended the dispositive motions deadline until July 19, 2017, and set the final pretrial conference for October 2, 2017. (ECF No. 55.)

**G.  Recommendation of Dismissal for Failure to Prosecute**

On June 26, 2017, Defendant filed a status report advising the Court that the discovery ordered to be produced on or before June 19, 2017, had not been received and that neither Mr. Davis or John Davis had communicated with Defendant regarding the outstanding discovery. (ECF No. 56.) On June 27, the Magistrate Judge recommended to the undersigned "that this case be dismissed with prejudice for failure to serve verified responses to written discovery, failure to comply with the Federal Rules of Civil Procedure and the Local Rules for the District Court for the District of Colorado ['Local Rules'], and failure to prosecute" (the "Recommendation"; ECF No. 57). (*Id*. at 7.) On July 11, 2017, Mr. Davis provided discovery responses to Defendant's Second Set of discovery requests, which Defendant had served on Mr. Davis in December

2016.  (ECF No. 63-1 at 2.)

On July 12, 2017, John Davis filed an objection to the Recommendation, offering the Court several reasons why the case should not be dismissed.  (ECF No. 58.)  First, John Davis argued that Mr. Davis should not be punished for the conduct of his attorney.  (*Id*. at 3.)  Second, John Davis discussed at length how he suffers from various health problems, including clinical depression, and how the combination of these were hindering his ability to prosecute the case.  (*Id*. at 3–5, 8.)  In his conclusion, John Davis apologized to the Court and the parties for his "failures and omissions in this case" and noted that he "is making every effort to stay current with his cases and workload, but due to his health problems, he gets overwhelmed, which causes [him] to fall into depression."  (*Id*. at 8.)

While the Recommendation was pending before this Court, Defendant filed two unopposed motions to amend the Scheduling Order.  (ECF Nos. 60 & 65.)  In the motions, Defendant asked that the dispositive motions deadline and the final pretrial conference be vacated until after the Recommendation had been resolved by this Court.  (*Id*.)  Both motions were subsequently granted by the Magistrate Judge.  (ECF Nos. 62 & 67.)

## H.    Alternative Sanctions

Considering the ultimate sanction of dismissal with prejudice proposed by the Magistrate Judge, the Court set a hearing for December 15, 2017, to discuss the Recommendation with the parties.  (ECF No. 70.)  At the hearing, the Court did not rule on the Recommendation, but rather ordered Defendant to file a proposed sanction short of dismissal by December 29, 2017, and ordered Mr. Davis to respond with a

suggested alternative form of sanction by January 5, 2018. (ECF No. 71.) In addition, based on John Davis's representation to the Court that he had retained Denver attorney John Mosby ("Mr. Mosby") as his local counsel, the Court ordered that if Mr. Mosby had not entered an appearance by January 5, 2018, then Mr. Davis must submit a filing which addresses the definitiveness or discussions with respect to retaining Mr. Mosby as co-counsel. (*Id*.; *see also* ECF No. 75.)

In response, Defendant proposed three sanctions. (ECF No. 72.) First, Defendant asked for the exclusion of certain witnesses' testimony. (*Id.* at 3.) Specifically, Defendant claimed that, "[i]n contravention of the requirements of Fed. R. Civ. P. 26(a)(1)(i), neither [Mr. Davis's] initial disclosures, provided in January 2016, nor his 'All-inclusive Witness List,' provided on November 4, 2016, includes any contact information for any of [Mr. Davis's] 29 witnesses." (*Id.*) Defendant asserted that he requested this information again in an interrogatory on December 20, 2016, to which Mr. Davis did not respond. (*Id.*; *see* ECF No. 44-1 at 5.) Moreover, Defendant claims that his counsel and the VA "independently sought to locate each of [Mr. Davis's] witnesses among its personnel records, but did not have current contact information for 13 of [Mr. Davis's] 29 witnesses." (ECF No. 72 at 3.) Thus, Defendant asserted that he "has been prejudiced because he was unable to depose any of these 13 witnesses during the 18-month discovery period in this case" and therefore "[P]laintiff should be precluded from introducing the testimony of the 13 witnesses." (*Id.* at 4.)

Second, Defendant proposed that Mr. Davis be ordered to produce his complete tax returns for 2015, 2016, and 2017. (*Id*.) Defendant claims that he had requested these tax returns in his Second Set of discovery requests, but the documents were

never provided by Mr. Davis. (*Id*. at 4–5; *see* ECF No. 63-1 at 20.)

Third, Defendant proposed a supplemental deposition of Mr. Davis "for the limited purpose of questioning him about the information contained in his belated discovery responses." (ECF No. 72 at 6.)

On January 6, 2018, Mr. Davis filed his response to Defendant's proposed sanctions, a day after the January 5 deadline set forth in the Court's prior order. (ECF Nos. 71 & 73.) In the response, Mr. Davis argued that all of his witnesses were employees at the Denver Regional Office of the VA and thus "Defendant was in possession of the contact information for all 29 persons named on Plaintiff's witness list." (*Id*. at 2.) Mr. Davis, however, did not object to providing Defendant with his income tax returns or undergoing a supplemental deposition. (*Id*.)

Mr. Davis also informed the Court that Mr. Mosby "had agreed to come on this case as [Mr. Davis's] local counsel" and that he anticipates that "Mr. Mosby's Entry of Appearance will be made early on January 8, 2018." (*Id*. at 3–4.) On January 24, however, Plaintiff filed a status report notifying the Court that Mr. Mosby "would not be able to participate in this case." (ECF No. 75.) John Davis advised the Court that he was currently interviewing "several other attorneys" and had also "reached out to his alma mater, the University of Denver College of Law[,] to get a referral for a law student to help with the case files." (*Id*.) Given these efforts, John Davis requested until "February 5, 2018, to secure local counsel for this case." (*Id*.) Mr. Davis, however, did not secure local counsel by that date.

## I.  Substitution of Plaintiff

On January 24, 2018, Mr. Davis passed away. (ECF No. 77.) Nearly a month

later, on February 20, John Davis filed a notice of suggestion of death. (*Id.*) On May 2, 2018, John Davis filed an unopposed Motion for Substitution of Party. (ECF No. 78.) In the motion, John Davis asked the Court to substitute Celina R. Davis, widow and successor in interest to Mr. Davis, as plaintiff in this lawsuit. (*Id.*) Later that day, the Court granted the motion. (ECF No. 79.)

**J.      Order Overruling Recommendation**

On May 29, 2018, the Court overruled the Magistrate Judge's recommendation that this case be dismissed with prejudice for failure to serve verified responses to written discovery, repeated failure to comply with the Federal Rules of Civil Procedure and the Local Rules, and failure to prosecute. (ECF No. 80.) The Court concluded "that in this case, the aggravating factors do not 'outweigh the judicial system's strong predisposition to resolve cases on their merits' as required under the *Ehrenhaus* test and thus a dismissal with prejudice is not warranted at this time." (*Id.* at 7–8.)

In regard to Defendant's proposed sanctions in lieu of dismissal, the Court ordered that discovery be reopened for 120 days (until September 26, 2018) to permit Defendant to depose any of the 13 witnesses referenced in the pleadings which he had not previously been able to depose. (*Id.* at 9.) In addition, the Court ordered Plaintiff to provide Mr. Davis's 2015, 2016, and 2017 tax returns to Defendant. (*Id.* at 10.) The Court, however, noted that it could no longer grant a supplemental deposition of Mr. Davis as he had passed away. (*Id.*) Moreover, the Court ordered the parties to jointly contact the Magistrate Judge's chambers for the purpose of scheduling a status conference. (*Id.* at 10–11.)

**K.      Local Counsel**

17

On June 11, 2018, the Magistrate Judge held the status conference, during which the parties and the Magistrate Judge discussed Plaintiff's efforts in complying with this Court's prior order (ECF No. 71), directing Plaintiff to have local counsel entered into the case by January 5, 2018.  (ECF No. 85.)  After the conference, the Magistrate Judge ordered Plaintiff to have local counsel entered into the case no later than July 11, 2018.  (*Id*.)

On July 12, 2018, however, Plaintiff filed an Unopposed Motion for Additional Time to Obtain Local Counsel.  (ECF No. 86.)  In the motion, John Davis informed the Court that he "wanted to talk to all of the attorneys recommended [to him] before making a suggestion to the Plaintiff."  (*Id*.)  Thus, "[o]ut of an abundance of caution, Plaintiff request[ed] an extension to July 20, 2018 for [her] local counsel to make his or her appearance."  (*Id*.)  The next day, the Magistrate Judge granted the motion and ordered Plaintiff to have local counsel enter his or her appearance no later than July 20.  (ECF No. 88.)  On July 19, attorney Lisa Rae Sahli ("Ms. Sahli") entered an appearance on behalf of Plaintiff.  (ECF No. 89.)

**L.      Further Extensions**

On June 23, 2018, the Magistrate Judge once again reset the dispositive motions deadline for October 26, 2018, and the final pretrial conference for January 14, 2019.  (ECF No. 90.)  On September 26, 2018, Defendant filed an Unopposed Motion for a 30-day Extension of the Discovery and Dispositive Motion deadlines.  (ECF No. 92.)  In the motion, Defendant discussed how the Court reopened discovery for 120 days, until September 26, for the limited purpose of allowing Defendant to depose certain witnesses which he had not previously been able to depose.  (*Id*. at 2; *see* ECF

18

No. 80 at 10.)  Defendant noted, however, that no discovery could be conducted during the majority of the 120 days due to John Davis's illnesses and the lack of co-counsel. (ECF No. 92 at 2–3.)

Defendant further noted that, on August 1, 2018, Defendant's counsel had asked John Davis to identify which of Plaintiff's potential witnesses she would mostly likely call at trial so that Defendant could prioritize his depositions.  (*Id*. at 2.)  Despite multiple requests, however, Defendant did not receive the requested information until September 24, which was two days before the renewed discovery deadline.  (*Id*.)  The Magistrate Judge subsequently granted the motion and yet again extended the discovery deadline until October 26, 2018, and the dispositive motion deadline until November 26, 2018.  (ECF No. 94.)

**M.    Motion for Summary Judgment**

On November 26, 2018, Defendant filed a Motion for Summary Judgment ("Motion for Summary Judgment"; ECF No. 95).  In the motion, Defendant claims that he is "entitled to summary judgment on each of Plaintiff's three claims, either because Plaintiff cannot make out a prima facie case, because Plaintiff's claims are procedurally infirm, or both."  (*Id*. at 19.)  Pursuant to D.C.COLO.LCivR 56.1(a), Plaintiff had until December 17, 2018, to file a response.

On December 17, 2018, Plaintiff filed a Motion for Extension of Time to Respond to Defendant's Motion for Summary Judgment (ECF No. 98) and a Motion to Continue Final Pretrial Conference (ECF No. 99).  In the motions, Plaintiff informed the Court that John Davis underwent heart surgery on November 27, 2018.  (ECF Nos. 98 at 1, ¶ 3 & 99 at 1, ¶ 3 .)  In addition, Plaintiff notified the Court that John Davis "was unable to

work for several weeks prior to his surgery, due to his illness, and because of his age (75), his physicians have ordered [John Davis] to spend 30 days post-surgery in bed, and to take at least 60 days off work."  (ECF Nos. 98 at 2, ¶ 4 & 99 at 1, ¶ 4 .)  Thus, Plaintiff requested that her deadline to respond to Defendant's Motion for Summary Judgment be extended from December 17, 2018, until February 18, 2019, and that the final pretrial conference be reset to or after March 18, 2019.  (ECF Nos. 98 at 2, ¶ 7 & 99 at 2, ¶ 9 .)  Later that day, the Magistrate Judge granted Plaintiff's two motions and extended Plaintiff's deadline to respond to Defendant's Motion for Summary Judgment until February 18, 2019 and reset the final pretrial conference for March 25, 2019. (ECF Nos. 101 & 102.)

On February 12, 2019, Plaintiff filed a second Motion for Extension of Time to Respond to Defendant's Motion for Summary Judgment.  (ECF No. 103.)  In the motion, Plaintiff asked the Court to further extend her deadline until February 25, 2019, as John Davis was still recovering from heart surgery.  (*Id.*; *see* ECF Nos. 103-1 & 104.) On February 13, the Court granted the motion an extended Plaintiff's deadline to file a response until "**February 25, 2019**."  (ECF No. 104 (emphasis in original).)  In the Order, the Court expressly noted: "**NO FURTHER EXTENSIONS WITH RESPECT TO THIS FILING WILL BE GRANTED**."  (*Id.* (emphasis in original).)

**N.     Pending Motion #1**

On March 11, 2019, Defendant filed a Motion to Vacate the Final Pretrial Conference and Deadline for Submitting a Proposed Final Pretrial Order ("Motion to Vacate Deadlines"; ECF No. 105).  In the motion, Defendant requests that the Court vacate the final pretrial conference and the deadline for filing a proposed final pretrial

order, and reset them, if necessary, after the Court rules on Defendant's Motion for Summary Judgment. (*Id.*)

Later that day, the Magistrate Judge postponed the final pretrial conference and the deadline for filing a proposed final pretrial order and noted that they would be reset at a later date. (ECF No. 107.) In addition, the Magistrate Judge ordered Plaintiff to file a response to Defendant's Motion to Vacate Deadlines "[n]o later than March 18, 2019." (*Id.*)

## O.    Pending Motion #2

On March 21, 2019, Ms. Sahli moved for the Court to (1) extend Plaintiff's time to respond to Defendant's Motion to Vacate Deadlines; (2) grant Plaintiff leave to seek substitute lead counsel; and (3) set a status conference to determine outstanding scheduling issues. (ECF No. 109.) In support, Ms. Sahli discusses how at no time prior to Plaintiff's March 18 deadline to submit a response to Defendant's Motion to Vacate Deadlines "did [John] Davis advise anyone that he was unable to, or would not, prepare a timely response to Defendant's Motion." (*Id.* at 3, ¶ 13.) Instead, Ms. Sahli alleges that John Davis had "indicated by e-mail" on March 13 "that he would submit a response to the motion." (*Id.* at 2, ¶ 4.) In particular, John Davis stated in the March 13 e-mail that it was taking him "a lot more time to get back to work than even [his] doctors imagined," but that "[he] will file o0pposition [*sic*] to all of the VA's motions." (ECF No. 111 at 3, ¶ 12.)

In addition, in her filing Ms. Sahli discusses how she had been advised by Plaintiff's son that Plaintiff "felt she needed to proceed with finding substitute counsel" on March 18, 2019, since "her efforts to communicate with [John] Davis were

unsuccessful." (ECF No. 109 at 2, ¶ 5.)  Moreover, Ms. Sahli notes that she had only agreed to undertake a limited role in this case, and that John Davis expressly agreed to maintain primary responsibility.  (*Id.* at 2, ¶ 6.)  Thus, Ms. Sahli asserts that due to "the sensitivity and complexity of the facts leading to this current situation, Plaintiff requests that this matter be set for a status conference."  (*Id.* at 2, ¶ 8.)

**P.    Pending Motion #3**

On March 22, 2019, Plaintiff moved for the Court to modify the Scheduling Order and extend Plaintiff's time to respond to Defendant's Motion for Summary Judgment. (ECF No. 111.)  In support, Ms. Sahli once again discusses how she had only agreed to take on a limited role in this case and how John Davis had assured her and Plaintiff before the February 25, 2019 deadline that he did not require her assistance in preparing Plaintiff's response to Defendant's Motion for Summary Judgment.  (*Id.* at 2–4, ¶¶ 5, 7, 9, 12, 16.)

Plaintiff further asserts that the Court has discretion to extend Plaintiff's time to respond to Defendant's Motion for Summary Judgment and amend the Scheduling Order because there was "good cause" for Plaintiff's delay under Rule 16(b)(4) and Plaintiff's failure to act was due to "excusable neglect" under Rule 6(b)(1)(B).  (*Id*. at 4–8.)  Plaintiff claims that "[g]ood cause is established in this instance by [John] Davis' sudden deterioration in health and unexpected inability to communicate his circumstances so that the summary judgment response deadline could be met."  (*Id*. at 5, ¶ 21.)  Plaintiff also alleges that her failure to timely submit her response to Defendant's Motion for Summary Judgment was due to excusable neglect.  (*Id*. at 6–8.) In particular, Plaintiff discusses how this failure "was due to a sudden, unforeseen

deterioration in [John] Davis' health condition," and how "[p]rior to the deadline, Plaintiff and her local counsel had no notice from [John] Davis that he would be unable to submit the response." (*Id*. at 6–7, ¶ 23.)

In regard to "the length of the requested extension[s]," Plaintiff states that she anticipates that substitute counsel can be retained by April 12, 2019, but that she is uncertain how long it will take for the new counsel to become up-to-date with the case files in order to prepare a response to Defendant's Motion for Summary Judgment. (*Id*. at 8, ¶ 29.) Accordingly, Plaintiff requests that the Court "set this matter for a status conference so that the logistics can be discussed and appropriate deadlines set," or extend Plaintiff's deadline to respond by an additional 90 days from the current February 25, 2019 deadline, which would be until May 26, 2019. (*Id*. at 8, ¶ 30.) As of April 15, 2019, substitute counsel has not entered an appearance on behalf of Plaintiff.

## II. LEGAL STANDARD

Rule 41(b) provides that "[i]f the plaintiff fails to prosecute or to comply with [the Federal Rules of Civil Procedure] or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). "Although the language of Rule 41(b) requires that the defendant file a motion to dismiss, the Rule has long been interpreted to permit courts to dismiss actions *sua sponte* for a plaintiff's failure to prosecute or comply with the rules of civil procedure or court's orders." *Gustafson v. Luke*, 696 F. App'x 352, 354 (10th Cir. 2017); *see also Link v. Wabash R.R.*, 370 U.S. 626, 630–32 (1962).

"If the dismissal is with prejudice," as it is in this case, "the district court must apply the factors [the Tenth Circuit] listed in *Ehrenhaus v. Reynolds*, 965 F.2d 916 (10th

23

Cir. 1992)—namely, (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the litigant's culpability; (4) whether the court warned the noncomplying litigant that dismissal of the action was a likely sanction; and (5) the efficacy of lesser sanctions." *Banks v. Katzenmeyer*, 680 F. App'x 721, 724 (10th Cir. 2017) (internal quotation marks omitted).

Under this framework, "dismissal is warranted when 'the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits.'" *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1144 (10th Cir. 2007) (quoting *Ehrenhaus*, 965 F.2d at 921). Moreover, "[t]hese factors do not constitute a rigid test; rather, they represent criteria for the district court to consider prior to imposing dismissal as a sanction." *Ehrenhaus*, 965 F.2d at 921.

### III. ANALYSIS

Plaintiff's failure to move this case forward has been manifest, to the point that it has been the oldest case on this Court's civil docket for several months. Plaintiff has been given more than ample opportunity to prosecute her lawsuit and comply with Court Orders, but she has repeatedly failed to do either. On the other hand, Defendant has diligently attempted to move this case along, but has been unable to due to Plaintiff's noncompliance. Accordingly, the Court has determined, as discussed with respect to the *Ehrenhaus* factors below, that the aggravating factors in this case clearly outweigh the judicial system's strong predisposition to resolve cases on their merits.

### A.    Degree of Actual Prejudice to Defendant

The Court finds that the "degree of actual prejudice to the defendant,"

*Ehrenhaus*, 965 F.2d at 921, has been considerable. First, Defendant has been prejudiced in obtaining prompt adjudication of the claims against him. This lawsuit was originally filed in July 2015 and concerns events that took place in 2009, 2010, and 2011. (*See* ECF No. 1.) Plaintiff's failure to prosecute and comply with Court Orders, the Federal Rules of Civil Procedure, and the Local Rules, however, have caused this case to needlessly drag on for nearly four years. A review of the record clearly shows that Defendant has diligently attempted to move this case forward, but has been unable to due to Plaintiff's repeated failure to prosecute and timely comply with Court Orders.

Second, Plaintiff's failure to prosecute has caused Defendant to suffer actual prejudice as important witnesses are no longer available. For example, in a joint motion for a status conference filed *three years ago*, the parties advised the Court that Defendant had concerns about "potential prejudice" as at least one witness had retired, another had left the VA for another agency, and how other witnesses had moved out of Colorado. (ECF No. 26 at 2, ¶ 7.) Almost *21 months ago*, in Defendant's most recent advisement to the Court of prejudice he was suffering due to Plaintiff's failure to prosecute, Defendant informed the Court that "at least one key witnesses has moved outside of the subpoena power of this court" and that the "whereabouts of nine of Plaintiff's witnesses, most or all of whom were VA employees at the time of the events giving rise to this lawsuit, are no longer known to either party." (ECF No. 63 at 3–4.) It is entirely reasonable to assume that the amount of actual prejudice to Defendant has only increased over the last 21 months.

Third, Plaintiff's failure to prosecute has caused Defendant to suffer actual

prejudice as Defendant was not able to depose Mr. Davis prior to his death about information contained in his belated discovery responses. Plaintiff was ordered to respond to Defendant's Second Set of discovery requests by January 19, 2017, but did not do so until July 11, 2017—more than five months after Mr. Davis's deposition took place. Unfortunately, before the Court could rule on whether it should reopen Mr. Davis's deposition to allow Defendant to question him about the information contained in his belated discovery responses, Mr. Davis passed away. Thus, Defendant was unable to depose Mr. Davis about the information contained in his discovery responses due to Plaintiff's dilatoriness and neglect.

Fourth, Defendant has been prejudiced in that he has been forced to expend time, money, resources, and effort over the last four years trying to move forward a case that was initiated by Plaintiff. This burden has been significantly exacerbated by Plaintiff's repeated failure to prosecute and comply with Court Orders, the Federal Rules of Civil Procedure, and the Local Rules. Plaintiff's noncompliance has required Defendant to prepare and file numerous documents, such as (1) a motion to reset the Scheduling Conference (ECF No. 14); (2) a motion for a status conference (ECF No. 26); (3) *seven* motions to amend the Scheduling Order (ECF Nos. 29, 41, 46, 60, 65, 92, 105); (4) two motions to compel (ECF Nos. 32 & 44); (5) a status report informing the Court of Plaintiff's failure to comply with a Court Order (ECF No. 56); and (6) a document detailing Defendant's proposed sanctions against Plaintiff (ECF No. 72). In addition, Defendant's counsel has had to appear at hearings on each of Defendant's motions to compel (ECF Nos. 38 & 53), as well as a hearing on the Recommendation (ECF No. 71). Moreover, Plaintiff's repeated delays in responding to Defendant's

written discovery requests caused discovery in this matter to drag on for nearly two years.

After a careful review of the record, the Court finds that it is beyond any reasonable dispute that Plaintiff's neglect of this case has prejudiced the Defendant by causing him to expend resources trying to move Plaintiff's case forward.  Accordingly, the Court finds that this factor weighs in favor of dismissal.

## B.    Degree of Interference with the Judicial Process

The "amount of interference with the judicial process," *Ehrenhaus*, 965 F.2d at 921, has undoubtably been significant.  Plaintiff's failure to prosecute this case and comply with numerous Court Orders, the Federal Rules of Civil Procedure, and the Local Rules evidences a lack of respect for the Court and the judicial process.  In particular, Plaintiff's neglect has caused the Court to expend unnecessary time and effort as the Court has been required to entertain over eighteen motions arising out of Plaintiff's cumulative failures to timely prosecute this case, including at least ***fifteen*** motions to extend various deadlines.  (*See, e.g.*, ECF Nos. 14, 26, 29, 32, 41, 44, 46, 60, 65, 78, 86, 92, 98, 99, 103, 105, 109, 111.)

The Court and the Magistrate Judge have held several hearings in order to address Plaintiff's repeated failure to prosecute this case and comply with Court Orders.  This includes two separate hearings on motions to compel discovery that was many months overdue (ECF Nos. 38 & 53), a hearing on the Magistrate Judge's recommendation that the case be dismissed with prejudice due to Plaintiff's failure to prosecute (ECF No. 71), and a status conference to discuss whether Plaintiff had hired

local counsel as she was directed to do more than five months prior (ECF No. 85).  In addition, Plaintiff's repeated failure to respond to Defendant's discovery requests during the eighteen month period discovery was open caused the Court to reopen discovery for an additional 120 days.  Moreover, Plaintiff's failure to respond to Defendant's Motion for Summary Judgment by the original due date of December 17, 2018, has interfered with this Court's ability to manage its docket.

In sum, Plaintiff's failure to prosecute and comply with Court Orders, the Federal Rules of Civil Procedure, and the Local Rules has caused the Court to issue numerous orders and hold several hearings.  This in turn has increased the workload of the Court and hindered its ability to diligently manage its docket, and has taken the Court's attention away from other matters where the parties have fulfilled their obligations and are deserving of prompt resolution of their issues.  Therefore, the Court finds that this factor weighs in favor of dismissal.

## C.    Culpability of Plaintiff

The "culpability of the litigant," *Ehrenhaus*, 965 F.2d at 921, is clear and blatant, given Plaintiff's repeated and willful violation of Court Orders and failure to prosecute this case.  While it can be argued that many of the delays can be attributed to counsel John Davis and his health issues, the Court finds that Plaintiff is clearly responsible for failing to comply with her obligations in this litigation.

The Court was first advised of John Davis's health issues *in December 2015.* (ECF No. 14.)  It is likely that Plaintiff has more knowledge than the Court about the history of John Davis's health issues and his capability to adequately represent her in this action, given that John Davis is the brother in law, and was the brother,

28

respectively, of Plaintiff and Mr. Davis.  Yet, Plaintiff and Mr. Davis ignored this reality for a very long period of time, and continued to let John Davis be their attorney in this action, even as his health began to decline over the last four years.  (*See, e.g.*, ECF Nos. 14, 26, 29, 32, 35, 41, 44, 58, 98, 99, 103, 109, 111.)  Yet, Plaintiff did not seek substitute counsel, other than a "law student" or local counsel to "help with the case files," until March 21, 2019.  (ECF No. 109; *see also* ECF No. 75.)

These are not the actions of a pro-active, diligent litigant, but rather are emblematic of a consistent, pervasive pattern by Plaintiff and her deceased husband to blind themselves, since at least late 2015, to the self-evident fact that they needed to retain new counsel years ago, counsel who had the physical health and legal experience to competently litigate their claims.

Moreover, "[t]here is certainly no merit to the contention that dismissal of [Plaintiff's] claim because of [her] counsel's unexcused conduct imposes an unjust penalty on the client."  *Link*, 370 U.S. at 633.  As the United States Supreme Court has observed, a Plaintiff voluntarily chooses his or her attorney as his representative, and cannot subsequently "avoid the consequences of the acts or omissions of this freely selected agent."  *Id*. at 633–34.  Any other rule would entail "visiting the sins of *plaintiff's* lawyer upon the *defendant*."  *Callahan v. Poppell*, 471 F.3d 1155, 1161 (10th Cir. 2006) (emphasis added).

Although more is surely not needed in this regard, the Court further notes that Plaintiff's response to Defendant's Motion for Summary Judgment was due on December 17, 2018.  On that date, Plaintiff filed a motion requesting 63 additional days to respond as John Davis had undergone heart surgery on November 27, 2018.  (ECF

29

No. 98.)  Thus, Plaintiff waited until the deadline date, and 20 days after John Davis had undergone heart surgery, to inform the Court and seek an extension.  The Magistrate Judge granted Plaintiff's motion and extend her time to respond until February 18, 2019.  (ECF No. 101.)

On February 12, however, Plaintiff filed yet another motion asking for a second of extension of one week.  (ECF No. 103.)  The motion was granted and Plaintiff was given until February 25 to file a response, with the Court explicitly noting: "**NO FURTHER EXTENSIONS WITH RESPECT TO THIS FILING WILL BE GRANTED**." (ECF No. 104 (emphasis in original).)  Plaintiff, however, did not file a response by the February 25 deadline.  Instead, Plaintiff waited another month to file a motion asking for a third extension.  (ECF No. 111.)  In that motion, Plaintiff asks the Court to extend the deadline until May 26, 2019.

In addition, Defendant filed a Motion to Vacate Deadlines on March 11, 2019. (ECF No. 105.)  Later that day, the Magistrate Judge ordered Plaintiff to file a response to the motion "[n]o later than March 18, 2019."  (ECF No. 107.)  Plaintiff, however, failed to comply with this Court Order as she did not file a response by the March 18 deadline. Rather, Plaintiff filed a motion on March 21 asking the Court to extend her time to respond.  (ECF No. 109.)  In the motion, Plaintiff does not specify how long of an extension she needs, but asks the Court to set the matter for a status conference.  (*Id*.)

This pervasive, consistent and indeed dogged pattern of repeated delays and noncompliance with Court Orders, the Federal Rules of Civil Procedure, and the Local Rules has been rampant in this case since it was filed in 2015.  Thus, the Court finds

that this factor weighs heavily in favor of dismissal as Plaintiff is clearly culpable for her noncompliance and for failing to prosecute this case.

**D.     Advance Notice of Sanction of Dismissal**

The Court finds that it has amply and clearly "warned the [Plaintiff] in advance that dismissal of the action would be a likely sanction for noncompliance." *Ehrenhaus*, 965 F.2d at 921.  While these warnings did not immediately precede this Order, they were clearly given to Plaintiff earlier in this case.

The Court notes, however, that "a warning is not a *sine qua non* for dismissal. On the contrary, no notice of any type need be given by the court prior to dismissal." *Rogers v. Andrus Transp. Servs*., 502 F.3d 1147, 1152 (10th Cir. 2007);  *see also Link*, 370 U.S. at 633 ("[W]hen circumstances make such action appropriate, a District Court may dismiss a complaint for failure to prosecute even without affording notice of its intention to do so.")  Indeed, the Tenth Circuit has held that "constructive notice—that is, notice (1) without an express warning and (2) objectively based upon the totality of the circumstances (most importantly, the trial court's actions or words) is sufficient." *Rogers*, 502 F.3d at 1152 (concluding litigant received constructive notice where district court had earlier entered show cause order warning that failure to file status report may result in dismissal); *see also Ecclesiastes*, 497 F.3d at 1150 (10th Cir. 2007) (concluding litigant had constructive notice where defendants had earlier filed Rule 41(b) motion to dismiss and district court had warned parties about possibility of sanctions).

Thus, even if Plaintiff were to argue that the Court did not provide an express

warning immediately prior to this Order that her case could be dismissed due to her noncompliance, the Court finds that, based upon the totality of the circumstances, it is beyond dispute that Plaintiff received at least constructive, if not actual notice that dismissal with prejudice was a sanction being considered by the Court.

Plaintiff was first warned at the June 14, 2017 hearing on Defendant's Second Motion to Compel Discovery that her noncompliance could result in the dismissal of this lawsuit. (ECF Nos. 53 & 57 at 3–4.) At the hearing, the Magistrate Judge explicitly warned: "Plaintiff's failure to comply with the court's orders and failure to respond to the discovery requests would result in this court's recommendation that the case be dismissed with prejudice pursuant to *Ehrenhaus v. Reynolds*, 965 F.2d 916 (10th Cir. 1992)." (ECF No. 57 at 3–4.) This warning was reiterated in the Magistrate Judge's written order, which stated that Plaintiff's failure to comply with the order "**may result in sanctions including dismissal of the case**." (ECF No. 53 (emphasis in original).)

When Plaintiff failed to comply with the order, the Magistrate Judge recommended that "this case be dismissed with prejudice for failure to serve verified responses to written discovery, failure to comply with the Federal Rules of Civil Procedure and the Local Rules for the District Court for the District of Colorado, and failure to prosecute." (ECF No. 57 at 7.) In the Recommendation, the Magistrate Judge provided specific instances of Plaintiff's noncompliance and failure to prosecute. (ECF No. 57.)

While the Court ultimately did not adopt the Recommendation, that does not mean that Plaintiff was no longer at risk of having her case dismissed for failure to

prosecute and comply with Court Orders, the Federal Rules of Civil Procedure, and the

Local Rules.  Indeed, in its very Order overruling the Recommendation, the Court

expressly stated that "[w]hile the Tenth Circuit has affirmed dismissal with prejudice

under similar circumstances, . . . the Court finds that exercising discretion in favor of

dismissal with prejudice will not serve the interest of justice *at this time*."  (*Id*. at 8

(emphasis added).)  Thus, the Court expressly left open the possibility—and indeed the

probability—that such a dismissal could in the future be warranted by Plaintiff's

continued failure to prosecute and persistent noncompliance with the Court's orders.

After the Court overruled the Recommendation, Plaintiff continued to fail to

prosecute and comply with Court Orders, the Federal Rules of Civil Procedure, and the

Local Rules.  Currently, Plaintiff is in noncompliance with at least two Court Orders.

Namely, after two extensions, Plaintiff's deadline to respond to Defendant's Motion for

Summary Judgment was postponed until February 25, 2019.  (ECF Nos. 98, 101, 103,

104.)  In the Order granting the last extension, the Court expressly noted: "**NO**

**FURTHER EXTENSIONS WITH RESPECT TO THIS FILING WILL BE GRANTED**."

(ECF No. 104 (emphasis in original).)

Plaintiff, however, failed to comply with the Court Order as she did not file a

response by the February 25 deadline.  Instead, Plaintiff filed a motion on March 22

asking the Court to extend her time to respond until May 26, 2019.  (ECF No. 111 at 8,

¶ 30.)  Similarly, Plaintiff was ordered to respond to Defendant's Motion to Vacate

Deadlines "[n]o later than March 18, 2019."  (ECF No. 107.)  Plaintiff, however, failed to

comply with this Court Order as she did not file a response by the March 18 deadline.

Instead, Plaintiff filed a motion on March 21 asking the Court to extend her time to respond.  (ECF No. 109.)

In sum, the Court finds that Plaintiff was clearly and unambiguously warned in advance on more than one occasion that dismissal of her action with prejudice could be a likely sanction for her noncompliance.  In particular, the Court finds that the Magistrate Judge's verbal warning at the June 14, 2017 hearing (ECF No. 57 at 3–4), the warning reiterated in the Magistrate Judge's written order (ECF No. 53), and the Recommendation (ECF No. 57) amounted to an "express warning," and at the very least provided Plaintiff with constructive notice.  Accordingly, Plaintiff cannot plausibly argue surprise that her failure to prosecute this case and comply with Court Orders could result in the sanction of dismissal with prejudice.  Therefore, the Court finds that this factor weighs in favor of dismissal.

### E.    Efficacy of a Lesser Sanction

Lastly, and significantly, the Court considers whether lesser sanctions would be enough.  *Ehrenhaus*, 965 F.2d at 921.  This factor strongly weighs in favor of dismissal. The record clearly shows that lesser sanctions imposed against Plaintiff are not (and indeed have never been) effective.  Namely, following the hearing on Defendant's Second Motion to Compel Discovery, the Magistrate Judge ordered that: (1) Plaintiff's objections to Defendant's Second Set of discovery requests be deemed waived; (2) the RFAs contained in Defendant's Second Set be deemed admitted; and (3) Defendant be awarded his costs and attorneys' fees incurred in pursing the Second Motion to Compel Discovery.  (ECF No. 53.)  In addition, the Magistrate Judge explicitly noted that "[f]**ailure to respond**" to Defendant's discovery requests by June 19 "**may result in**

34

**sanctions including dismissal of the case.**" (ECF No. 53 (emphasis in original).) Plaintiff nevertheless did not comply with the court-ordered deadline, but instead continued to flout the order and subsequent Court Orders.

In addition, the Court chose at that time to impose alternative sanctions against Plaintiff rather than adopting the Magistrate Judge's recommendation that this case be dismissed with prejudice for Plaintiff's failure to prosecute and comply with Court Orders, the Federal Rules of Civil Procedure, and the Local Rules. In particular, the Court: (1) reopened discovery for 120 days to permit Defendant to depose 13 witnesses which he had not been able to depose previously; and (2) ordered Plaintiff to provide Mr. Davis's tax returns within 30 days. (ECF No. 80 at 10.) Regardless of these lesser sanctions, Plaintiff has continued to ignore Court Orders, and has shown an utter disregard for moving her case forward.

As a consequence, the Court finds that it would be futile to impose any lesser sanction than dismissal on Plaintiff, who has repeatedly failed to advance this case and comply with Court Orders even after being sanctioned on two different occasions. At this juncture, the Court has no confidence that giving Plaintiff *another* chance, subject to additional lesser sanctions, would finally secure Plaintiff's full participation in this case. Accordingly, the Court finds that this factor weighs in favor of dismissal.

In the final analysis, when weighing all of the *Ehrenhaus* factors, this case presents the rare instance in which it is appropriate to dismiss Plaintiff's claims entirely and with prejudice, as a sanction for Plaintiff's willful and persistent litigation misconduct. Accordingly, the Court will dismiss Plaintiff's Complaint (ECF No. 1) with prejudice. As a result, Defendant's Motion for Summary Judgment (ECF No. 95),

Defendant's Motion to Vacate Deadlines (ECF No. 105), Plaintiff's Motion to Expand

Time to Respond to Defendant's Motion to Vacate the Final Pretrial Conference,

Request for Leave to Seek Substitute Counsel, and Request for Status Conference

(ECF No. 109), and Plaintiff's Motion to Modify Scheduling Order and for an Extension

of Time to Respond to Defendant's Motion for Summary Judgment (ECF No. 111) are

moot.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Plaintiff's Complaint (ECF No. 1) and this action are DISMISSED WITH
   PREJUDICE;

2. Defendant's Motion for Summary Judgment (ECF No. 95) is DENIED AS MOOT;

3. Defendant's Motion to Vacate the Final Pretrial Conference and Deadline for
   Submitting a Proposed Final Pretrial Order (ECF No. 105) is DENIED AS MOOT;

4. Plaintiff's Motion to Expand Time to Respond to Defendant's Motion to Vacate
   the Final Pretrial Conference, Request for Leave to Seek Substitute Counsel,
   and Request for Status Conference (ECF No. 109) is DENIED AS MOOT;

5. Plaintiff's Motion to Modify Scheduling Order and for an Extension of Time to
   Respond to Defendant's Motion for Summary Judgment (ECF No. 111) is
   DENIED AS MOOT;

6. The Clerk of the Court shall enter judgment in favor of Defendant on all claims
   and terminate this case; and

7. Each party shall bear his or her own costs.

Dated this 15th day of April, 2019.

BY THE COURT:

_____
William J. Martínez
United States District Judge